**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

DARYL W. SMITH,

        Petitioner,

v.
                                     **Civil Action No.  1:08cv138**
                                     **Criminal Action No.  1:03cr39-9**
                                     **(Judge Stamp)**

UNITED STATES OF AMERICA,

        Respondent.

## OPINION/REPORT AND RECOMMENDATION

On July 8, 2008, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody.  (CR Dckt. 420, CV Dckt. 1).  On

September 16, 2008, the undersigned determined that summary dismissal of the petition was not

warranted and the respondent was directed to file an answer.  (CR Dckt. 446).  The United States

filed a response to the petition on November 14, 2008.  (CR Dckt. 463, CV Dckt. 5).  The petitioner

filed a reply on January 12, 2009.  (CR Dckt. 477).  This case is before the undersigned for a report

and recommendation pursuant to Standing Order No. 4 and LR PL P 83.01, *et seq.*

## I.  Procedural History

**A.  Conviction and Sentence**

On July 3, 2003, petitioner and nine other individuals were named by a federal grand jury

in a twenty-nine count indictment.  (CR Dckt. 1).  Specifically, the petitioner was named in five

counts of the indictment alleging: Count 1 (conspiracy to distribute in excess of 5 grams of cocaine

base from on or about August 28, 2002 to on or about the date of the indictment, in violation of 21

U.S.C. § 841(a)(1), 846 and 841(b)(1)(B)); Count13 (aiding and abetting the distribution of cocaine base within 1,000 feet of a playground on or about February 20, 2003, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 860, and Title 18, U.S.C. § 2); Count 14 (possession with intent to distribute more than five (5) grams of cocaine base on or about February 20, 2003, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C)); Count 20 (aiding and abetting the distribution of cocaine base within 1,000 feet of a playground on or about April 15, 2003, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 860, and Title 18, U.S.C. § 2); and Count 29 (aiding and abetting the distribution of cocaine base within 1,000 feet of a playground on May 29, 2003, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 860, and Title 18, U.S.C. § 2). Id.

On September 4, 2003, a Superseding Indictment (CR Dckt. 153) was filed, specifically naming petitioner in six out of thirty counts, alleging: Count 1 (conspiracy to distribute more than 50 grams of cocaine base from at least the spring of 2002 to on or about July 9, 2003, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(A)); Count13 (aiding and abetting the distribution of cocaine base within 1,000 feet of a playground on or about February 20, 2003, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 860, and Title 18, U.S.C. § 2); Count 14 (possession with intent to distribute cocaine base on or about February 20, 2003, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)); Count 20 (aiding and abetting the distribution of cocaine base within 1,000 feet of a playground on or about April 15, 2003, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 860, and Title 18, U.S.C. § 2); Count 29 (aiding and abetting the distribution of cocaine base within 1,000 feet of a playground on May 29, 2003, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 860, and Title 18, U.S.C. § 2); and Count 30 (possession with intent to distribute more than 5 grams of cocaine base, in violation of Title 21, U.S.C. §§ 841(a)(1) and

841(b)(1)(B)).  Id.

On December 3, 2003, an Information regarding petitioner's two prior felony drug convictions was filed by the respondent pursuant to 21 U.S.C. § 851.  (CR Dckt. 211).  Petitioner proceeded to trial, and on December 10, 2003, was convicted on three counts and found not guilty on three counts.  (CR Dckt. 219).  He was convicted of conspiracy to distribute more than 50 grams of cocaine base (Count One), aiding and abetting the distribution of cocaine base within 1,000 feet of a playground (Count Twenty-Nine), and possession with intent to distribute more than 5 grams of cocaine base (Count Thirty).  Id.

Pursuant to the District Court's directive, a Pre-Sentence Investigation Report was prepared, which recommended relevant conduct in excess of 500 grams of cocaine base, and an enhancement for obstruction of justice for threatening and intimidating witnesses.  (CR Dckt. 263 at p. 18-25).  In addition, because the jury had found the petitioner guilty of distribution activity within 1,000 feet of a playground in violation of 21 U.S.C. § 860, an increase of one level pursuant to U.S.S.G. § 2D1.2(a)(2) was also assessed.  (CR Dckt. 463 at p. 2-3).  On May 19, 2004, petitioner was sentenced to 360 months imprisonment.  (CR Dckt. 266).

**B.**    **First Direct Appeal**

Petitioner filed a direct appeal of his sentence to the Fourth Circuit Court of Appeals on May 26, 2004.  (CR Dckt. 267).  As grounds therein, the petitioner asserted the following:

(1)    The District Court erred in denying a mistrial for juror misconduct and proceeding with 11 jurors;

(2)    The District Court erred in ruling that the petitioner could not cross-examine a witness with a fourteen-year-old bribery conviction;

(3)    The District Court erred in ruling that petitioner could not impeach witnesses by memorandums or interviews prepared by case agents which had never been seen or

adopted by the witness; and

(4)     The District Court erred in calculating the relevant conduct attributable to the petitioner in light of <u>Blakely v. Washington</u>.

On July 13, 2005, in a Per Curiam opinion, the Fourth Circuit Court of Appeals found no error in the petitioner's conviction, but did vacate the sentence and remand to the District Court for re-sentencing due to the recent Supreme Court decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).  (CR Dckt. 295).  Mandate on that decision issued on August 2, 2005.  (4th Cir. Dckt. 51) (04-4420).  On remand on June 29, 2006, the District Court once again sentenced the petitioner to 360 months of imprisonment.  (CR Dckt. 375).

C.     **<u>Second Direct Appeal</u>**

Petitioner filed a notice of a second direct appeal of his conviction and new sentence on July 6, 2006.  (CR Dckt. 380).  As grounds for this appeal, the petitioner asserted the following:

(1)     Petitioner's sentence was unreasonable because the District Court's finding concerning the quantity of crack attributable to him was based on a co-defendant's trial testimony, which petitioner claimed was not credible;

(2)     The District Court refused to consider as grounds for a variance the dismissal of a juror during his trial; and

(3)     The District Court declined to impose a variance sentence to correct the disparity between petitioner's sentence and the sentences of his co-defendants.

On February 6, 2007, the Fourth Circuit Court of Appeals affirmed the new sentence by unpublished opinion.  (CR Dckt. 401).  Mandate issued on February 28, 2007.  (CR Dckt. 402).

On May 3, 2007, petitioner filed a writ of certiorari with the United States Supreme Court (4th Cir. Dckt. 29) (06-4730), which was denied on June 29, 2007.  (4th Cir. Dckt.30) (06-4730).[1]

---

[1] One year later, on June 27, 2008, petitioner submitted this § 2255 petition to prison officials for mailing. (CR Dckt. 482).  This petition was received on July 8, 2008.  (CR Dckt. 420, CV Dckt. 1).

4

Subsequently, on July 7, 2009, the District Court granted the petitioner's motion for retroactive application of sentencing guidelines to crack cocaine offenses. (CR Dckt. 488), reducing petitioner's sentence from 360 months to 292 months. Id.

## D. Federal Habeas Corpus

### Petitioners' Contentions (CR Dckt. 420, CV Dckt. 1)

In his federal habeas petition and supporting memorandum of law, the petitioner raises multiple issues for relief including:

(1) Ineffective assistance of counsel because:

    (a)  Trial counsel was inexperienced in federal law;

    (b)  Counsel gave petitioner misleading information in concerns to case;

    (c)  Counsel did not call witnesses requested by the petitioner;

    (d)  Counsel formulated poor trial strategy;

    (e)  Counsel filed motions under the wrong titles;

    (f)  Counsel's opening statement was "mediocre and racist;" and

    (g) Counsel did not have proper credentials to represent petitioner in all proceedings.

(2) The instructions to the remaining jury members to proceed with deliberations after the dismissal of one jury member were improper;

(3) Petitioner was sentenced to crack cocaine penalties in spite of the fact that substance was never proven to be crack;

(4) Police witnesses fabricated evidence to implicate petitioner in conspiracy;

(5) Trial Judge violated petitioner's Sixth Amendment rights during sentencing by taking into account conduct which the petitioner had been acquitted of;

(6) Sentence for Count Twenty-Nine (29) of the indictment was improper because there was no listed threshold drug amount;

(7) Petitioner's 360 month sentence creates an unacceptable disparity between the petitioner and his "more culpable co-defendants;"

(8) District Court erred in applying a twenty (20) year mandatory minimum for Count One (1);

(9) Trial Judge's instructions to the jury were improper;

(10) It was improper for a black defendant to stand trial before an all-white jury;

(11) It was improper for the Court to rely on facts stated in the Pre-Sentence Report to enhance the petitioner's sentence.

## Government's Response (CR Dckt. 463, CV Dckt. 5)

In its response, the government answers the petitioner's claims as follows:

(1) Petitioner's ineffective assistance of counsel claim is without basis for several reasons. First, petitioner's defense counsel was in fact successful in having a jury return not-guilty verdicts on three of the six charges he faced. Second, charges of ineffective counsel are suspicious considering defense counsel was commended by the Fourth Circuit Court of Appeals during the second appellate process for his vigorous cross-examination which furthered the court's understanding of certain inconsistencies in the trial record. (CR Dckt. 401 at p. 5). Third, transcript from the pre-trial hearing shows that while defense counsel did mislabel a motion, the court still ruled on the motion and thus the petitioner was not denied an opportunity to argue the point of the motion. Fourth, respondent asserts that based on the sworn testimony of the witness in question from the suppression hearing, it should not be considered ineffective that, at trial, defense counsel choose not to call the witness requested by the petitioner. Fifth, Petitioner's claim that counsel's opening statement was "improper, prejudicial and racist" was baseless and taken out of context.[2]

(2) The petitioner's second ground should be denied as it was raised specifically on direct appeal by the petitioner and, therefore cannot be relitigated in a § 2255 motion.

(3) The petitioner's third ground fails factually and procedurally. First, respondent asserts that the parties in this case had previously entered into a stipulation determining that the substance in question had been analyzed and determined to be cocaine base. Second, this issue was not raised on direct appeal and the petitioner has shown no prejudice or cause as to why it was not raised, thus the claim is procedurally defaulted and must be denied.

---

[2] The government's response addressed only five out of the seven IAC issues petitioner asserted, omitting to respond to petitioner's first and last IAC claims: whether trial counsel was inexperienced in federal law, and whether counsel had proper credentials to represent petitioner in all proceedings. Both of those issues will be addressed later here.

(4) Petitioner's fourth ground of police misconduct is without any factual basis.

(5) Petitioner's fifth ground can be denied because the claim has no legal foundation and his sentence has already been upheld by the Court of Appeals.

(6) Petitioner's sixth ground is incorrect as to the law and, even if it were legally accurate, it would be procedurally barred, as petitioner failed to raise it on his first or second appeal.

(7) Petitioner's seventh ground is barred by the mandate rule as a matter previously adjudicated by the Appellate Court.

(8) Petitioner's eighth ground is procedurally barred because this issue was not raised during either appellate reviews and he has not shown any prejudice in reference to the claim.

(9) Petitioner's ninth ground has no legal basis, is based on a misunderstanding of legal principles, rehashes arguments made in his fifth and eleventh grounds that are already barred by the mandate rule, and should be denied.

(10) Petitioner offers no evidence to prove that District Court's jury selection procedure systematically excluded any distinctive group in the community and thus must be denied.

(11) Petitioner's eleventh ground is barred by the mandate rule as a matter previously adjudicated by the Appellate Court.

## Petitioner's Reply (CR Dckt. 482)

In his reply, after briefly reiterating his stance on the timeliness of his § 2255 motion, the petitioner responds to the government's contentions as follows:

(1) Petitioner asserts that his appellate counsel, after reviewing the entire case file, stated for the record during the re-sentencing hearing that the previous trial counsel was ineffective. Further, petitioner reiterates that counsel was ineffective because he was not a member or the United States Supreme Court Bar and thus could not file his writ of certiorari.

(2) Petitioner asserts that the respondent has misread the actual issue of ground two, as the issue he is raising, that the eleven jurors proceeded to deliberate after one juror was excused rather than start anew in deliberations, has not been ruled on by the Fourth Circuit.

(3) Petitioner asserts that respondent's interpretation of the case law is false. He offers no comment in response to respondent's assertion that he was one of the parties that stipulated to the finding that the substance in question had been analyzed and determined to be cocaine base. He asserts that he was justified in not presenting this issue during a previous appeal because he was not aware of it.

(4) Petitioner reiterates that all his claims regarding police misconduct are substantiated in the trial record.

(5) Petitioner refutes respondent's assessment that claim has no legal foundation.

(6) Petitioner asserts that drug quantities must be treated as elements of the offense charged in the indictment and proved to a jury beyond a reasonable doubt. As this was not done, Count Twenty-Nine of the indictment was faulty.

(7) Petitioner refutes respondent's claims that he has an extensive criminal history and that he committed any obstruction of justice, justifying a greater sentence than that of his co-defendants.

(8) Petitioner argues that the issue was not raised on appeal because the petitioner's second attorney, a Federal Public Defender, mistakenly relied on the Amended Judgment and Commitment Order and thus "felt it would be a waste of time addressing an issue that was already resolved by the District Court."

(9) Petitioner asserts the respondent is a "master at playing word semantics" and is attempting to confuse the issue.

(10) Petitioner acknowledges that his cited case law was incorrect and then asserts that "whatever method was used excluded people of defendant's ethnic background."

(11) Petitioner assert that respondent's logic is flawed as its reliance on United States v. Booker is outdated. Petitioner further argues that new evidence and case law that was not available at the time of the filing of his appeal should be ground enough to not bar this issue under the mandate rule.

## II.  Timeliness

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion.  The limitation period shall run from the latest of the following:

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

<table>
<tr><td>(3)</td><td>the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or</td></tr>
<tr><td>(4)</td><td>the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.</td></tr>
</table>

28 U.S.C. § 2255.

Petitioner filed a writ of certiorari with the United States Supreme Court, which was denied on June 29, 2007. (CR Dckt. 436). Accordingly, under AEDPA, petitioner had until June 29, 2008, to timely file a § 2255 motion. Because the petition was received by the court after the AEDPA deadline, the undersigned issued a notice pursuant to <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4th Cir. 2002), advising petitioner that his motion would be recommended for dismissal absent a sufficient explanation. (CR Dckt. 429). In his response to the Court's <u>Hill v. Braxton</u> Notice, petitioner asserted that his §2255 petition was timely because his writ of certiorari was denied on June 29, 2007, giving him until June 29, 2008 to file his 2255 petition, and that he filed his 2255 petition on June 27, 2008, the date its certificate of service was signed. (CR Dckt. 436). In its response to petitioner's § 2255 motion, the respondent asserts that despite petitioner's claims that the motion was executed and mailed on June 27, 2008, even taking into account the mailbox rule, the motion was not mailed until July 2, 2008, and that since petitioner offered no explanation for the five-day delay, his motion should be denied as untimely. (CR Dckt. 463). In response to this charge by the respondent, petitioner's reply asserts that he submitted the motion to prison officials for mailing on June 27, 2008, that he has no control over prison mailing procedures and thus the petition should be considered timely. (CR Dckt. 482)

While the undersigned recognizes that the petition was received several days after the conclusion of the one-year limitation prescribed by the AEDPA, and appears to have been mailed

on July 2, 2008, absent indisputable evidence to the contrary, the undersigned has no choice but to accept the petitioner's word that his motion was delivered to prison officials on June 27, 2008, two days before expiration of the one-year statute of limitation. Thus, the petitioner's motion is deemed timely.

## III.  Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### Ground One - Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

### 1. Inexperience in Federal Law

In this ground, petitioner asserts that his trial counsel was inexperienced in federal law and that this inexperience led his counsel to commit many errors in his representation of the petitioner. As to this claim, the undersigned finds that petitioner has failed to satisfy his burden under Strickland. In coming to this conclusion, the court notes that counsel's prior trial experience – regardless how large or small – does not establish *ipso facto* whether he was constitutionally ineffective in this case. Kandies v. Polk, 385 F.3d 457, 469 n. 7 (4th Cir.2004) (vacated on other grounds by Kandies v. Polk, 545 U.S. 1137, 125 S.Ct. 2974, 162 L.Ed.2d 884 (2005)); see also Yohey v. Collins, 985 F.2d 222, 228 (5th Cir.1993) ("[A]n attorney can render effective assistance of counsel even if he has had little prior experience in criminal cases. 'Whether the defendant has

been afforded his right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work.'") (citations omitted). To the contrary, "[w]hen considering an ineffective assistance of counsel claim, the attorney's actual performance is examined, rather than his or her experience, which is an indicator of the attorney's likely performance." <u>Kandies</u>, 385 F.3d at 469 n. 7. In the instant case, petitioner has failed to prove that counsel's actual performance fell "below objective standards of reasonableness." <u>Strickland</u>, 466 U.S. at 687.

In fact, viewing the outcome of the case, counsel's representation seems more than reasonable. It is difficult to argue that counsel was inexperienced and ineffective when he was successful in having the jury return not-guilty verdicts on half of the six felony counts that the petitioner was facing. It is difficult to imagine that a defense counsel who secures three acquittals should be found ineffective. There is no credible evidence to support any of petitioner's allegations, and rather, there is ample evidence in the record that directly contradicts his claims as outlined below.

### 2. Relating Misleading Information

In this ground, the petitioner asserts that in pre-trial correspondence, defense counsel initially told him that a conviction at trial would cost the petitioner 20 to 24 years in prison. Roughly a month later counsel notified the petitioner that he should consider taking a plea, as the charges in the recently-filed Superseding Indictment[3] raised his potential minimum time to be served to 40 years. During sentencing, however, petitioner asserts that he learned that the Federal Sentencing

---

[3] The Superseding Indictment, filed September 4, 2003 (Dckt. No. 153), changed Count One against petitioner and 9 co-defendants from 'Conspiracy to Distribute in Excess of 5 Grams Cocaine Base' to 'Conspiracy to Distribute Cocaine Base in Excess of 50 Grams' and added a Count Thirty against petitioner alone, "Possession with Intent to Distribute More than 5 Grams Cocaine Base,' for the cocaine base found in his pants pocket on arrest.

Guidelines called for only a sentence of 30 years to life, so the information provided by his counsel was "false."

This claim must also fail. The Fourth Circuit, as well as several other circuits of the United States Court of Appeals, have held that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." McLachlan v. United States, 2008 U.S. Dist. Lexis 10611 at 6, quoting Hughes v. United States, 2007 U.S. Dist. Lexis 19416, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), cert. denied, 549 U.S. 1151, 127 S. Ct. 1027, 166 L. Ed. 2d 774 (2007); United States v. Foster, 68 F.3d 86 (4th Cir. 1995). Indeed, it has been noted that

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore, . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

McLachlan at 6, quoting Hughes, 2007 U.S. Dist. Lexis 19416, 2007 WL 841940 at *5, citing United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

Here, petitioner does not even claim that had he received a more accurate prediction of what his sentence would be that he would have pled guilty to obtain a lesser sentence. He merely alleges he received "false" information. Thus, he has neither shown that his counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment, nor that he was prejudiced in any way by his counsel's inaccurate prediction. This claim has no merit.

### 3. Failure to Call to Testify Certain Witnesses Requested by the Petitioner

In this ground, the petitioner asserts that defense counsel failed to subpoena and call to testify

certain witnesses that he requested. Specifically, the petitioner asserts that he requested defense counsel call Jill Templin, his girlfriend. The petitioner asserts that this witness would have provided an alibi to Count Thirty, as to why he was carrying 11.2 grams of cocaine base at the time of his arrest. In addition, petitioner asserts that the failure to call this witness "resulted in the jury hearing only the dubious testimony of those whom had something to gain (sentence reductions)." (CR Dckt. 420, CV Dckt. 1).

The petitioner's vague assertion that the witness Templin would have testified that the drugs found in the defendant's pants' pocket were placed there by her is easily overcome by a review of the record. Testifying before the undersigned at a suppression hearing on August 30, 2003, the witness Templin did not provide any such testimony. To the contrary, as noted in the undersigned's Report and Recommendation issued in response to petitioner's Motion to Suppress, the undersigned found that the defendant was attempting "to leave the impression with the Court that the police planted the drugs and money in his pants pocket at the same time as he was being shown the pants." (Dckt. 125 at 8). This inference was found to be "incredible and not supported by factual evidence." Id. at 9. As the petitioner now claims that the witness would have testified differently than she previously did at the suppression hearing, it is understandable that petitioner's counsel would choose to not call her to the stand, since her proposed testimony would have directly contradicted petitioner's own prior sworn testimony. Faced with a such a situation, petitioner's counsel can hardly be viewed as ineffective for refusing to call the conflicting witness. Therefore, this claim is without merit.

### 4. Formulation of Poor Trial Strategy

In this ground, petitioner asserts that counsel formulated a devastatingly poor trial strategy

by forming petitioner's entire defense around impeaching his co-defendants with their fraudulent Memorandum of Interviews and Grand Jury testimony. Petitioner states that only after the trial began did counsel "realize that co-defendants could not be impeached with the Memorandum of Interviews because they were not sworn statements." (CR Dckt. 420, CV Dckt. 1).

However, the Fourth Circuit Court of Appeals expressed a completely opposite interpretation regarding this issue. In its review of the petitioner's relevant conduct and the appropriateness of using co-defendant Vernon Maxwell's testimony, the Fourth Circuit found that petitioner's counsel had been effective in challenging the Maxwell's credibility, noting that "[t]he district court had the opportunity to hear and observe Maxwell as he testified, and was able to assess his credibility. As a result of the vigorous cross-examination conducted by Smith's attorney, the court was well aware of the inconsistencies in Maxwell's pre-trial statements." (CR Dckt. 401 at 5). It is clear from the record that the Fourth Circuit found defense counsel's cross-examination and impeachment of the co-defendant to be satisfactory. For the same reasons asserted by the the Appeals Court, this claim has no merit.

### 5. Filing of Mistitled Motions

In this ground, petitioner asserts that his counsel was incompetent because he requested a "NCIC [a copy of petitioner's criminal history] and titled it a Motion in Limine and a Motion to Dismiss under the same title [sic]," which the Court later held was not a Motion in Limine. Petitioner appears to argue that this misidentification denied him the opportunity to make that specific argument. However, the transcript from the pre-trial conference hearing of December 2, 2003, clearly shows that while the Court did find that the motion as filed was not a motion in limine but rather, an untimely motion to dismiss, it still ruled on the motion. (CR Dckt. 271 at p. 9), thus

the defendant was not aggrieved by being denied an opportunity to be heard on this issue and it, too, has no merit.

### 6. Opening Statement "Mediocre and Racist"

In this ground, petitioner asserts that his counsel was ineffective because his opening statements were "improper, prejudicial and racist." Petitioner asserts that counsel's statements "makes it abundantly clear that "being a blackman [sic] alone is a crime." Notwithstanding these allegations, if one actually reads defense counsel's entire opening statement, it is clear that the petitioner has deliberately grossly misrepresented counsel's intentions and taken his words out of context. In petitioner's opening statement to the jury, counsel actually states that the petitioner was innocent of everything except being a black man, asserting:

> I will tell you something right from the start, I am going to surprise these gentlemen, Mr. Smith is guilty. He is guilty of being a black man. He is guilty of having long hair. He is probably guilty of knowing a few people who aren't exactly the most model citizens in the world; but he is not guilty of what the government is charging him with.

(Trial Transcript, Day 1 at 55, CR Dckt. 272-1).

Having reviewed the rather effective opening statement of the defense counsel, the undersigned can find no statements or actions on the part of counsel that were improper and be cause for this court to not have confidence in the outcome of the proceedings. Any improper remarks were inconsequential, did not render the petitioner's trial fundamentally unfair and have been misinterpreted by the petitioner. As such, this claim has no merit.

### 7. Proper Credentials

In this ground, petitioner asserts that when it came time to appeal the 4th Circuit's decision to the United States Supreme Court, counsel admitted to him that the process of filing a writ of certiorari was foreign to him. Later, counsel stated that he did not believe the petitioner had any

certiorari-worthy issues to proceed with the writ and that since counsel was not a member of the United States Supreme Court bar, he could not "file anything [there] on your behalf anyway." (CR Dckt. 420, [un-numbered] Attach. 4, CV Dckt. 1). Petitioner asserts that this proves that counsel did not have proper credentials to represent the petitioner in any and all proceedings that come after a jury trial, in violation of the Sixth Amendment.

After an adverse appellate judgment, appointed counsel must inform appellant in writing of his right to petition the Supreme Court of the United States for a writ of certiorari. Wilkins v. United States, 441 U.S. 468, 469 (1979); See also Proffitt v. United States, 549 F.2d 910, 912-913 (4th Cir.1976), cert. denied, 429 U.S. 1076 (1977) (citing Plan of the United States Court of Appeals for the Fourth Circuit in Implementation of the Criminal Justice Act of 1964, Part VI(B)(2); F.R.Cr.P. 44(a); Doherty v. United States, 404 U.S. 28 (1971)). Counsel must prepare for filing in the Supreme Court and transmit to the defendant, a timely petition for such a writ if requested by the defendant to do so. Id.

The United States Court of Appeals for the Fourth Circuit Local Rule 46(d) (former Internal Operating Procedure 46.3) states in pertinent part that:

> The duty of counsel appointed under the CJA [Criminal Justice Act] extends through advising an unsuccessful appellant in writing of the right to seek review in the Supreme Court. If the appellant requests in writing that a petition for writ of certiorari be filed and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall file such a petition. If appellant requests that a petition for writ of certiorari be filed but counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with the Court of Appeals. The motion must reflect that a copy was served on the client and that the client was informed of the right to file a response to the motion within seven days. The Clerk will hold the motion after filing for fifteen days before submitting it to the Court to allow time for appellant's response, if any, to be received.

4TH CIR. L.R.46(d).

Additionally, the Fourth Circuit has previously noted that "[u]nder the Criminal Justice Act, a federal criminal defendant in the Fourth Circuit has the right to representation through his direct appeal, including the filing of a certiorari petition in the Supreme Court." United States v. Woodhouse, 1996 WL 278751 at *3 (C.A.4 (Va.)).

In United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir.2000) the Court wrote, "In order to establish a Sixth Amendment violation based on counsel's failure to appeal, Witherspoon must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed. See Roe v. Flores-Ortega, 528 U.S. 470 (2000)."

Here, counsel would have been ineffective if he simply failed to file the petition for certiorari after petitioner requested that he do so, thereby depriving petitioner of the opportunity to file his writ. However, the record clearly shows that upon reviewing the facts, the Rules of the United States Supreme Court, and the relevant case law, petitioner's counsel determined there were no certiorari-worthy issues to raise upon appeal. Accordingly, petitioner's counsel properly and timely advised him that he was filing a motion to withdraw as his counsel, permitting petitioner to file the writ himself *pro se*, and further, that he had asked the court to grant an extension of time for petitioner, so that petitioner could file his own writ. (CR Dckt. 420, [un-numbered] Attach. 4, CV Dckt. 1). As previously stated, petitioner did eventually file his *pro se* writ for certiorari and therefore he never lost the right to do so, nor did he ever suffer any harm from his counsel's actions. Consequently, petitioner cannot meet the first or second part of the Roe v. Ortega test and he is not entitled to relief on this issue**.**

**Ground Two**

In his second ground, the petitioner objects to the District Court's management of the

dismissal of one of the twelve jury members.  Specifically, petitioner claims that prior to the biased

juror being excused, the twelve-person jury made a finding of guilt on Count One.  Petitioner claims

that after the removal of the biased juror, the jury proceeded to the next Count, rather than starting

anew.  Petitioner asserts that the District Judge's instructions to the jury of eleven to proceed with

deliberations, rather than restart the entire process from the beginning, is a clear violation of his

Fourteenth Amendment rights to the guarantee of an impartial jury.

As the government has stated in its brief, the core of this issue was raised specifically on

direct appeal by the petitioner and, therefore, cannot be relitigated in a 2255 motion.[4]  In his first

appeal, petitioner asserts that the District Court erred in failing to grant a mistrial for jury

misconduct and for proceeding to verdict with eleven jurors.  In its decision, the Fourth Circuit

Court of Appeals found no error in the Court's handling of the excused juror issue.  United States

v. Smith, 138 F. App'x, 557, No. 04-4420 (4th Cir. 2005) (CR. Dckt. 295).  Countering the

petitioner's assertion of error, the Fourth Circuit found:

> Under the circumstances of this case, we see no abuse of discretion.  The jury promptly
> suspended deliberations when the comments were made and referred the matter to the court.
> The court voir dired each juror individually and determined each was willing to consider all
> of the evidence fairly and impartially.  Finally, the court dismissed the offending juror before
> allowing the jury to return to deliberations.  Under these circumstances, we find no error.

Id. at p. 2-3.

The Court then furthered its justification in footnote 1 of its opinion, stating:

> To the extent Smith assigns error to the district court's decision to allow the jury to continue
> deliberations with eleven jurors, we find no error.  See United States v. Fisher, 912 F.2d 728,
> 733 (4th Cir. 1990).

---

[4] Issues that have already been raised and decided on direct appeal cannot be reconsidered absent a showing
of a change in the law.  Davis v. United States, 417 U.S. 333 (1974); Boeckenhaupt v. United States, 537 F. 2d 1182
(4th Cir. 1976). Here there has been no such showing by the petitioner.

Id. at 3.

While the petitioner states that his current issue differs from the issue answered above by the Fourth Circuit, this is simply not the case. Petitioner states that the district judge's instruction to the jury to proceed with deliberations was an error that was not addressed by the Fourth Circuit. However, the Fourth Circuit's opinion clearly states that no error occurred in the "district court's decision to allow the jury *to continue* deliberations with eleven jurors." (emphasis added). In addition, even if this issue was not covered in the scope of the Fourth Circuit's ruling, petitioner has no evidence that the jury did not reconsider Count One upon being asked to continue deliberations. With this lack of evidence, petitioner cannot show any harm that resulted from the instructions to continue with deliberations. As the petitioner has failed to show any prejudice from the decision and the Fourth Circuit has already ruled on this issue, this claim is without merit.

**<u>Ground Three</u>**

In this ground, petitioner asserts that it was error for the District Court to sentence him for "crack cocaine" in spite of the fact that the substance was never proven to actually be crack cocaine. Petitioner argues that because "cocaine and cocaine base carry the same chemical meaning, the statute [he was charged with] appears ambiguous, [as it] provides two different sets of penalties for the same offense." (CR. Dckt. 420 at p. 7). Petitioner continues that in order to prove a substance is actually crack cocaine, a chemist must test the substance for sodium bicarbonate. In his case, petitioner asserts that these tests were never done, thus there is "no proof substance was smokable and [that] the purity was . . . that of crack." Id. In his motion, petitioner states he did not raise this issue on appeal because his attorney did not know of it.

"[A] final judgment commands respect. For this reason, we have long and consistently

affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. Actual prejudice is then shown by demonstrating that the error worked to petitioners' "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995).

The standard of effective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel

was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted).  On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).  Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal. Bell v. Jarvis, 236 F.3d at 164.  Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989).  "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted).  However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000).  "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Here, even if this ground did not immediately and  abysmally fail on the facts, since not only was there was sufficient lay evidence at trial to prove that the substance in question was crack, the petitioner himself was one of the parties that entered into a stipulation at trial that the substance in

question was in fact crack cocaine (Dckt. No. 214), petitioner's mere assertion in his reply to the government's response that the issue was foreign to him and his counsel and that it should have been raised on appeal also fails. Likely petitioner's counsel did not choose to raise this issue on appeal because it was clearly a non-issue: the content of the substance had been stipulated to, based on the forensic analysis conducted at the DEA-Mid Atlantic Laboratory. As the 4th Circuit previously ruled, factual stipulations have a "special nature," as they are

> agreed to and signed by a defendant, his attorney, and the prosecutor. Such a stipulation is more potent than simply an admission. By so stipulating, a defendant waives the requirement that the government produce evidence (other than the stipulation itself) to establish the facts stipulated to beyond a reasonable doubt." <u>See</u> <u>United States v. Clark</u>, 993 F.2d 402, 406 (4th Cir. 1993).

<u>United States v. Muse</u>, 83 F.3d 672, 678 (4th Cir. 1996).

This issue fails factually. Furthermore, since petitioner cannot show that counsel was ineffective for not raising it on appeal, cannot demonstrate the requisite cause and prejudice, or show that a fundamental miscarriage of justice will occur if it is not considered on the merits, this issue is also procedurally defaulted and cannot be raised for the first time in a § 2255 motion and should be denied.

**<u>Ground Four</u>**

In this ground, petitioner asserts that there was serious police misconduct involved throughout his trial. This misconduct allegedly included police officers wrongly implicating the petitioner into the conspiracy, fabricating evidence and giving false testimony in order to ensure his conviction. To highlight this purported conspiracy, petitioner asserts that "[i]n each Count to where they [police officers] testified, the defendant was found guilty" and "in all Counts in which the government depended solely on the testimony of co-defendants and confidential informants the defendant was acquitted." (CR Dckt. 420, CV Dckt. 1).

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006). Here, petitioner provides no affidavits, declarations, or other evidence to support his claim. Instead he relies on his own speculation, conjecture and conclusions. Therefore, petitioner has failed to show by a preponderance of the evidence that he is entitled to relief and this claim should be dismissed.

**Ground Five**

In this ground, petitioner asserts that his rights were violated when the District Court included as part of its relevant conduct drug weights from Counts in which he had been acquitted. To support this argument, petitioner cites U.S.A. v. Ibanga, 454 F.Supp.2d 532 (E.D.Va. Oct 05, 2006) (No. 2:04CR227), as standing for the proposition that a federal judge violates a defendant's Sixth Amendment right to a jury trial by taking into account conduct of which the jury has acquitted the defendant.

This claim fails on several grounds. First, the case cited by the petitioner has since been overruled by the Fourth Circuit Court of Appeals in U.S. v. Ibanga, 271 Fed. Appx. 298 (4th Cir.(Va.) Apr 01, 2008):

> Section 3661 of Title 18 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This information includes acquitted conduct proven by a preponderance of the evidence. See Watts, 519 U.S. at 151-57,

117 S.Ct. 633.

Id. at 301.

The 4th Circuit Court of Appeals then held that while the district court had conducted Ibanga's "sentencing proceedings with great deliberation, [it] . . . had committed significant procedural error by categorically excluding acquitted conduct from the information that it could consider in the sentencing process." Ibanga's sentence was vacated and his case remanded for resentencing in accordance with the guidance provided by Gall and Kimbrough."[5] Id. Because of this decision, the petitioner's claim is without merit.[6] Moreover, this claim also fails because the district court's finding of relevant conduct was upheld by the Fourth Circuit in its second decision upholding the petitioner's conviction and sentencing. U.S. v. Smith, 216 Fed.Appx. 362, (4th Cir. 2007) (CR Dckt. 401).

**Ground Six**

In this ground, petitioner asserts that his sentence in regards to Count Twenty-Nine of the indictment, was improper because that Count was deficient in that it did not specifically state a "threshold drug amount." (CR Dckt. 420, CV Dckt. 1). Petitioner states that drug quantities must be treated as elements of the offense, which includes being listed in the indictment and being proved to a jury beyond a reasonable doubt.

Petitioner again appears to be mistaken on the law regarding this issue. In Count Twenty-Nine, petitioner was charged with aiding and abetting the distribution of a quantity of cocaine base

---

[5] Gall v. U.S., 552 U.S. 38, 128 S.Ct. 586 (2007) & Kimbrough v. U.S. 552 U.S. 85, 128 S.Ct. 558 (2007).

[6] Additionally, uncharged crimes may properly be considered "relevant conduct" for sentencing purposes including crimes which have either been dismissed or for which defendant has been acquitted. United States v. Watts, 519 U.S. 148, 155-56 (1997); United States v. Montgomery, 262 F.3d 233, 249 (4th Cir.), cert. denied, 534 U.S. 1034 (2001); and, United States v. Romulus, 949 F.2d 713, 716-17 (4th Cir. 1991).

within 1,000 feet of a playground and was subsequently convicted of the same. As such, petitioner was subject to imprisonment based upon a violation of 21 U.S.C. § 841(a)(1) which makes it an crime to distribute cocaine base. Following the decisions in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>United States v. Booker</u>, 543 U.S. 220 (2005), courts have required the government, when seeking enhanced punishments under Section 841 to specify an amount in excess of either 5 or 50 grams, when the drug is cocaine base. (CR Dckt. 463, CV Dckt. 5). If the United States does not make such a specific allegation providing the defendant with notice, then a defendant will be subject to the lowest of cocaine base penalties of up to 20 years. Such is what happened in this case. The government simply indicted the petitioner for a quantity of cocaine base, which ultimately subjected him to the lowest threshold amount in the statute for a violation of 21 U.S.C. § 841(a)(1). That penalty was subsequently enhanced, not because of the amount of drugs, but rather because the conduct itself occurred within 1,000 feet of a protected location, subjecting him to not less than one nor more than forty years. <u>Id</u>. Thus the District Court's determination of petitioner's sentence was proper and there is no merit to this claim.

In addition, since this claim could have been but was not previously raised during either the petitioner's first or second appeal, it is also barred on procedural grounds.

## **Ground Seven**

In this ground, petitioner alleges that his 360 month sentence creates an unacceptable disparity between himself and his co-defendants, asserting that it is categorically unfair that "the actual offenders or instigators of the drug transactions that the defendant supposedly aided and abetted, received far less time than the defendant." (CR Dckt. 420, Attach. 1 at 19, CV Dckt. 1). Petitioner also attempts to refute the government's allegations that his extensive criminal history and an obstruction of justice accusation for threatening witnesses and their families should have led to

an enhancement of his sentence. Petitioner further argues that he should not be punished for choosing "to pursue his right to a jury trial outlined in the Sixth Amendment," rather than taking a lower sentence through a plea bargain as the co-defendants did in this case.

Like the claim in Ground Two, this claim has been previously heard by the Fourth Circuit Court of Appeals and thus cannot be relitigated. In petitioner's second direct appeal, petitioner argued that it was error that the District Court declined to impose a variance sentence to correct the disparity between the petitioner's sentence and the sentences of his co-defendants. In sentencing, the District Court had found that the petitioner, unlike his co-defendants, had an extensive criminal history that led to a higher criminal history category. In addition, the court found the petitioner had obstructed the investigation by threatening witnesses and their families, for which an enhancement to the sentence was appropriate. For these reasons, the court denied the variance and chose to renew the petitioner's original sentence of 360 months.

On appeal, the Fourth Circuit denied this claim and affirmed the District Court's sentence. In finding with the lower court, the Fourth Circuit stated

> [I]n deciding against a variance on this ground, the district court found that Smith and his co-defendants were not similarly situated. The other defendants had different criminal histories and had benefitted from plea agreements. In addition, Smith received an adjustment for obstruction of justice based on his threats to co-defendants. We conclude that the court did not err in finding that the disparity was warranted. We therefore affirm the sentence imposed by the district court.

CR Dckt. 401 at p. 7-8.

There is no doubt that the issue raised in this ground was previously addressed and rejected by the Fourth Circuit in petitioner's second appeal. It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Thus, this claim is procedurally barred and should be dismissed accordingly.

**Ground Eight**

In this ground, the petitioner asserts that the District Court erred in applying a 20-year mandatory minimum sentence for his Count One conviction. Petitioner asserts that the jury made a finding that the broad conspiracy in Count One involved in excess of 50 grams of cocaine base. However, the petitioner asserts, the jury failed to find that the defendant was individually responsible for that amount. Absent such an individualized determination by the jury regarding the threshold drug quantity as to the defendant, the petitioner argues, no mandatory minimum penalty may be imposed.

As noted above, petitioner was charged along with nine other co-defendants in a conspiracy to distribute more than 50 grams of cocaine base. Every defendant, excluding the petitioner, chose to plead guilty prior to trial. Petitioner was the lone defendant to proceed to a trial by jury. After a three-day trial, the jury was given a verdict form in order to determine whether the petitioner was guilty of conspiracy to distribute cocaine base. The jury was then given a special interrogatory to answer if they found the defendant guilty of conspiracy beyond a reasonable doubt. This interrogatory read "[h]aving found the defendant guilty in Count One, the jury further finds beyond a reasonable doubt that the crime involved 50 grams or more of cocaine base, also known as crack." Upon finding the petitioner guilty, the jury also marked the box for the special interrogatory. (CR Dckt. 219).

Normally, based upon such a verdict, the petitioner would be subject to a statutory sentence of not less than ten years nor more than life pursuant to 21 U.S.C. § 841(b)(1)(A). However, prior to the petitioner's trial, the United States filed an Information under Title 21, United States Code, Section 851, stating that the defendant had two previous felony drug convictions. (CR Dckt. 211). At the time of sentencing, the District Court found that the defendant stipulated to those previous

felony convictions (CR Dckt. 278 at 19), which, by statute, then raised his potential sentence for a conviction on Count One to not less than twenty years to life imprisonment.

At his first sentencing, petitioner made no objection to the mandatory minimum ruling of the court. Following the remand by the Fourth Circuit, at his second sentencing, the petitioner did object to the mandatory minimum finding based upon the jury's special interrogatory. (CR Dckt. 385, at 58-63). The court overruled the defendant's objection, finding that as to Count One, the petitioner was subjected to a sentence of not less than twenty years nor more than life because of his previous felony drug conviction. Petitioner did not appeal this issue to the Fourth Circuit Court of Appeals during his second appeal.

As in ground three, ground eight should have been raised on direct appeal and is now procedurally defaulted, unless the petitioner can show cause and prejudice for the default. Petitioner does not specifically state any potential cause or prejudice but asserts in his Reply to the government's Response that the failure to file an appeal was "an error committed by defendant's second counsel." (Dckt. 482). Petitioner then states that his counsel "probably felt it would be a waste of time addressing an issue that was already resolved by the District Court." Id. The undersigned concurs with the petitioner's second counsel. Because the petitioner fails to make the requisite showing of cause and prejudice, or that a fundamental miscarriage of justice will occur if this ground is not considered on the merits, that ground is procedurally defaulted as well and cannot be raised for the first time in a § 2255 motion. Accordingly, ground eight should be denied.

### Ground Nine

In this ground, petitioner asserts that the court's instructions to the jury were improper. Specifically, petitioner asserts that the court "totally abandoned the instructions and actually played both roles of judge and jury." Petitioner then accuses the District Court of usurping the jury's

authority at sentencing, through the court's utilization of relevant conduct of the co-defendants, whose testimony, he argues, the jury did not believe.

This claim appears to be a combination of several other arguments previously articulated in the petitioner's motion to vacate; specifically, ground five's acquitted conduct argument and ground eleven's relevant conduct argument. As the undersigned has determined that neither of those two arguments has any legal basis, neither does the petitioner's amalgamated argument. Based on the analysis of the undersigned in those separate sections of this opinion, both finding the issues to be without merit, so too is this issue without merit.

## Ground Ten

In this ground, petitioner asserts that is was improper for him as an African-American to be convicted by a jury composed of "no blacks nor other ethnic groups." Thus petitioner claims that the jury lacked anyone who could be considered his peer.

With this ground, petitioner offers no evidence that the District Court's process systematically excluded any distinctive group in the community. As held by the United States Supreme Court, in order to establish a prima facie violation of the fair-cross-section requirement, a defendant

> must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

Petitioner has not addressed nor provided evidence for any of these factors. Therefore, this ground is unsupported, has no merit and should be denied.

## Ground Eleven

In this ground, petitioner asserts that it was a violation of his Sixth Amendment rights for the District Court to adopt the "so called facts" within the pre-sentence report in order to "enhance" his sentence. Petitioner asserts that based upon recent decisions of the Supreme Court, including Booker, it is unlawful for a Judge to make relevant conduct calculations that were not specifically found by the jury.

Petitioner again misunderstands the law with respect to this issue. While the Supreme Court in Booker did find a violation of a defendant's Sixth Amendment rights where sentences were enhanced under mandatory guideline ranges, upon the sentencing Judge's determination of facts solely, the petitioner's argument completely disregards Booker's remedial authorization that the guidelines are no longer mandatory but simply advisory. Contrary to the defendant's assertions, the Booker court specifically anticipates the sentencing Judge making factual findings for any and all circumstances. In fact, the Court directs that the sentencing Judge consult the guidelines and take them into account when sentencing. Booker, 125 S.Ct. at 767.

In the instant case, this type of action is exactly what the sentencing court did. Upon making its factual findings, the court made the finding that the petitioner was responsible for 507.3 grams of cocaine base and sentenced him accordingly. Later, at his second sentencing hearing, the petitioner objected to those findings and following the court's ruling, appealed the court's decision to the Fourth Circuit Court of Appeals. However, the Fourth Circuit also disagreed with the petitioner's objections and ruled that the district "court did not clearly err in determining that Smith was responsible for more than 500 grams of crack and that a base offense level of 32 applied." (Dckt. 401 at p. 5).

Thus, as this issue has been previously addressed on the merits by the Fourth Circuit Court of Appeals during the petitioner's second appeal, this claim is procedurally barred and should be

dismissed accordingly.

### IV.   Conclusion

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion (CR Dckt. 420, CV Dckt. 1) and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this Recommendation, any party shall file with the Clerk of the Court written objections identifying those portions of the Recommendation to which objections are  made, and the basis for such objections.  A copy of such objections shall also be submitted to the United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.  The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: July 31, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE